# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

REBEL COMMUNICATIONS, LLC, a  )
Nevada Limited Liability Company, )
                                  )
                    Plaintiff,    )     Case No.  2:10-cv-00513-LRH-GWF
                                  )
vs.                               )     **ORDER**
                                  )
VIRGIN VALLEY WATER DISTRICT, *et.al.*, )  **Motion to Disqualify Plaintiff's**
                                  )     **Counsel - #90**
                    Defendants.   )
_____)

This matter is before the Court on Defendant Virgin Valley Water District's Motion to Disqualify Plaintiff's Counsel (#90), filed on December 22, 2010; Defendants Smith and Gustaveson's Joinder and Supplement to the Motion to Disqualify Plaintiff's Counsel (#91), filed on January 5, 2011; Plaintiff's Opposition to the Motion to Disqualify Plaintiff's Counsel (#92), filed on January 10, 2011; Defendant Virgin Valley Water District's Reply in Support of its Motion to Disqualify Plaintiff's Counsel (#94), filed on January 20, 2011; and Defendants Smith and Gustaveson's Reply in Support of Motion to Disqualify Plaintiff's Counsel (#95), filed on January 20, 2011.  The Court conducted a hearing in this matter on February 3, 2011.

## BACKGROUND

Plaintiff Rebel Communications, LLC filed this action against the Virgin Valley Water District ("Water District"), the City of Mesquite, and Robert "Bubba" Smith on April 9, 2010.[1] Plaintiff alleges that it entered into a twenty year lease with the Water District in April 2007 under which Plaintiff was granted the right to construct and operate a telecommunications tower and

---

[1] Defendant Karl Gustaveson was named as a defendant in Plaintiff's First Amended Complaint filed on September 24, 2010.  Defendants Smith and Gustaveson are members of the Board of Directors of the Virgin Valley Water District.

other improvements on real property commonly known as the White Rock Property. The telecommunications tower was intended to provide service to local police, fire department and other governmental agencies in the Virgin Valley-Mesquite area. The Water District expressly represented and warranted that it had the authority to execute the lease agreement and that the White Rock Property was "not subject to any administrative order or any judgment or decree, including any order concerning wetlands or endangered or threatened species." *Complaint (#1)*, ¶ 17. Plaintiff also alleges that the Water District expressly represented and warranted that it would not enter into "any leases or agreements affecting the leasing or management of the Improvements without Lessee's consent." ¶ 18.

Plaintiff alleges that contrary to the Water District's representations, a portion of the White Rock Property is located on Federal Bureau of Land Management ("BLM") land. The BLM cited Plaintiff for trespass after it constructed the telecommunications tower. Plaintiff alleges that the Water District thereafter entered into a settlement agreement with the BLM on or about February 22, 2010 pursuant to which it accepted responsibility for the construction of the tower and agreed to pay all fees resulting from the BLM's investigation of the alleged trespass. On February 25, 2010, however, the Water District notified the BLM that Plaintiff had breached its lease and the Water District Board had voted to end its relationship with Plaintiff. Plaintiff alleges that the Water District's conduct exposed Plaintiff to a further charge of trespass. Plaintiff also alleges that the Water District breached the lease by determining that Plaintiff was in default and immediately terminating the lease without affording Plaintiff the opportunity to cure the default. *Complaint*, ¶¶ 24-32.

Plaintiff also alleges that the Water District breached the lease by permitting the Defendant City of Mesquite to build a competing telecommunications tower on another parcel of real property owned or controlled by the Water District and that the City of Mesquite intentionally interfered with Plaintiff's contractual relations and prospective business advantage. In support of this claim, Plaintiff alleges that Defendant Smith was the City of Mesquite's representative on the Water District's Board of Directors and had prior knowledge of the Rebel lease agreement. *Complaint*, ¶¶ 33-37.

Defendants move to disqualify Plaintiff's counsel Bret Whipple based on his alleged improper *ex parte* communication with the Water District's former general counsel George Benesch and his legal representation of the the Water District's former general manager, Michael Winters. The facts relating to these matters are as follows:

On June 14, 2010, Plaintiff filed a Motion for Preliminary Injunction to enjoin the City of Mesquite and the Water District from allowing any public safety agencies to use the competing telecommunications tower until the Court determines Plaintiff's rights under the lease. *See Motion for Preliminary Injunction (#17).* The Water District filed a supplemental opposition brief on July 13, 2010 in which it argued that Plaintiff was relying on vague and ambiguous provisions in the lease which it drafted and which must therefore be construed in favor of the Water District. In support of this argument the Water District attached an affidavit by its general counsel S. Eric Wilbanks. *See Supplemental Brief (#47)*, page 4, note 2 and *Exhibit A, Wilbanks' Affidavit*. Mr. Wilbanks stated in his affidavit that he had spoken to the Water District's former general counsel, George Benesch, regarding the drafting and preparation of the lease between the Water District and Rebel Communications. According to Mr. Wilbanks, Mr. Benesch indicated that he negotiated a few provisions of the lease, but stated that the lease was principally drafted by Blu Whipple, who is a brother of Cody Whipple, the CEO of Rebel.[2]

In response to the supplemental opposition and Mr. Wilbanks' affidavit, Plaintiff filed its *Motion for Leave to File Reply (#54)* on July 21, 2010. In support of this motion, Plaintiff's counsel, Bret Whipple, submitted an affidavit stating that Mr. Benesch contacted him during the second week of July and told Mr. Whipple that he was concerned that the information he had provided to Mr. Wilbanks was being misrepresented to the Court. *Motion for Leave to File Reply (#54), Affidavit of Bret O. Whipple*, ¶¶ 11-12. Plaintiff also attached an affidavit by Mr. Benesch who stated that he served as general counsel for the Water District for 17 years until late 2009. Mr. Benesch stated that he negotiated and drafted contracts with various entities and individuals on behalf of the Water District. *Motion (#54), Benesch Affidavit*, ¶¶ 1-2. Mr. Benesch further stated

---

[2] Plaintiff's counsel, Bret Whipple, is apparently a third Whipple brother.

that he negotiated the terms of the Rebel Communications lease with its legal counsel, Kurt "Blu" Whipple. Mr. Benesch stated that Blu Whipple drafted the initial version and that he reviewed that version and requested changes. Drafts were exchanged back and forth. Mr. Benesch attached to his affidavit a draft of the lease which showed the redlined version that he returned to Blu Whipple. *Benesch Affidavit*, ¶5.

Mr. Benesch also stated that he exchanged emails with the Water District's current general counsel Bo Bingham and Eric Wilbanks regarding their inquiry to him about the lease negotiations with Rebel Communications and whether he would be willing to provide an affidavit. (A copy of the emails was also attached to the Plaintiff's *Motion (#54)*). Mr. Benesch stated that he spoke by telephone with Mr. Wilbanks on July 13th and informed him that to the best of his recollection, Blu Whipple drafted the lease and that he responded to some of the provisions. Mr. Wilbanks asked Mr. Benesch if he would be willing to sign an affidavit. Mr. Benesch stated that he wanted to think about it and was willing to look over a draft affidavit. The following morning, July 14th, Mr. Benesch sent an email to Mr. Bingham and Mr. Wilbanks stating that he would be willing to sign an affidavit. *Benesch Affidavit*, ¶7-9. Shortly after sending that email, Mr. Benesch learned that Mr. Wilbanks had filed his own affidavit which Mr. Benesch did not consider to be accurate. Specifically, Mr. Benesch did not recall referring to "a few provisions" as stated in paragraph 4 of Mr. Wilbanks' affidavit, and he did not state that the lease was "principally" drafted by Blu Whipple as stated in paragraph 5 of Mr. Wilbanks' affidavit. ¶ 11.

The Water District objected to Plaintiff counsel's allegedly improper *ex parte* communication with Mr. Benesch during the preliminary injunction hearing on July 22, 2010. The District Judge stated that he would not consider Mr. Benesch's statements in deciding the motion, which he thereupon denied. *July 22, 2010 Minutes of Proceedings (#62)*. In his subsequent written order, the District Judge stated that while Plaintiff had shown a likelihood of success on the merits, it had not shown that it would suffer irreparable injury if injunctive relief was not granted. The District Judge also held that an injunction was not in the public interest. *Order (#63)*.

Defendants also move to disqualify Plaintiff's counsel based on his representation of Michael Winters, the Water District's former general manager. Mr. Winters executed the Rebel

Communications lease agreement on behalf of the Water District on April 17, 2007.  *See Complaint (#1), Exhibit 1*.  Bret Whipple represented Mr. Winters at the meeting of the Water District's Board of Directors on February 2, 2010 during which Mr. Winters' employment was terminated by majority vote of the board.  According to the minutes, Board member Karl Gustaveson recited a number of concerns about Mr. Winters' job performance, including his handling of a water purifying process plant that was to be built on the Oasis Golf Course, a well that was drilled without BLM approval, and an arsenic plant that was built on land owned by the City of Mesquite, but which was previously owned by the BLM.  Mr. Gustaveson also expressed concern about the communications tower that was built without BLM approval, the fees the District would now have to pay to the BLM "and possible repercussions with the agreement between the District and Rebel Communications."  *Defendants' Joinder (#91), Exhibit 1, Minutes*, pages 2-3.  Other members of the board discussed and debated Mr. Winters' job performance.  *Minutes,* pages 3-4.

The minutes state that Mr. Whipple asked to address the board on behalf of Mr. Winters.  *Minutes*, page 4.  Mr. Whipple told the board that Mr. Winters' intent had always been to do the best for the board and citizens.  Mr. Whipple also discussed the status of a criminal investigation regarding Mr. Winters.  He indicated that the District Attorney was reviewing the matter, but it was not then before the grand jury.  Mr. Whipple also stated that Mr. Winters had brought in millions of dollars for the Water District and had received positive evaluations over the last three years.  He questioned why Mr. Winters' performance was now an issue.  *Minutes*, page 4.  Mr. Winters also responded to questions from the board, including a question about the communications tower.

Mr. Winters was indicted by the Clark County, Nevada grand jury for misconduct by a public officer on June 18, 2010.  The indictment is not related to the Rebel Communications lease.  According to the District Court minutes, the deputy district attorney requested that a summons be sent to Defendant Winters in care of his attorney Bret Whipple.  *Motion to Disqualify Plaintiff's Counsel (#90), Exhibit 4.*  The Water District has also submitted a print-out of a June 19, 2010 article in the internet edition of the *Las Vegas Review Journal*, "reviewjournal.com," in which Mr. Whipple discussed Mr. Winters' indictment.  *Motion (#90), Exhibit 5.*  According to the article, Mr.

Whipple stated that "the case against his client is weak and politically motivated." Mr. Whipple also stated that the board voted to approve the contract that was the subject of the indictment and they should have voted against it "if they felt it was a bad deal." *Motion (#90), Exhibit 5.*

Mr. Whipple states in his affidavit in support of Plaintiff's opposition to the motion to disqualify that his primary purpose in representing Mr. Winters at the February 2, 2010 board hearing was to ensure that the personnel matter was conducted in a public hearing. *Opposition (#92), Whipple Affidavit*, ¶ 2. Mr. Whipple states that Mr. Winters' relationship with Rebel Communications, LLC was not discussed during the board hearing, although board member Karl Gustaveson raised the communications tower built on BLM land as one of several concerns about Mr. Winters. ¶ 4. Mr. Whipple also states that prior to the February 2nd hearing he contacted the District Attorney's office and requested that they summons Mr. Winters to appear before a justice of the peace, rather than obtain a warrant for his arrest. ¶ 5. Mr. Whipple states that to his knowledge Mr. Winters was not represented by counsel at the grand jury and that he did not represent Mr. Winters in his criminal case. ¶¶ 6-7. Mr. Whipple's affidavit states that he was contacted by members of the press after Mr. Winters' employment was terminated and he gave interviews which were apparently published at a later date. ¶ 5. Mr. Whipple stated at the hearing on this motion, however, that he has no recollection of actually speaking to the press about Mr. Winters, although he often speaks to the news media on behalf of clients charged with crimes. Finally, Mr. Whipple states that the only information he learned about the Water District as a result of his representation of Mr. Winters was that which was disclosed during the public comments at the February 2, 2010 board hearing. ¶ 8.

Plaintiff also submitted an affidavit by attorney T. Augustus Claus. *Opposition (#92), Exhibit 1, Claus Affidavit.* Mr. Claus states that to his knowledge, Mr. Winters was not represented by counsel at the grand jury. Mr. Claus states that he was retained and made his first appearance on Mr. Winters' behalf on July 1, 2010 and that he continues to represent Mr. Winters in the criminal matter. Mr. Claus further states "[t]hat Mr. Whipple has never been retained as co-counsel in this matter, nor has Mr. Whipple made any appearances in this matter on my behalf." *Claus Affidavit*, ¶¶ 3-7.

# DISCUSSION

The judges in this district have had frequent occasion to set forth the general principles governing motions to disqualify opposing counsel. As Magistrate Judge Johnston recently stated in *Kelly v. CSE Safeguard Insurance Co.,* 2010 WL 3613872 *1 (D.Nev. 2010):

> Disqualification motions present courts with a delicate and sometimes difficult balancing task. *Brown v. Eighth Judicial Dist. Court ex rel. County of Clark,* 116 Nev. 1200, 14 P.3d 1266, 1269-70 (Nev.2000). Close cases are resolved in favor of disqualification. *Palmer v. Pioneer Inn Assocs.*, 19 F.Supp.2d 1157, 1162 (D.Nev.1998) ("Where disqualification is contemplated, 'any doubt is resolved in favor of disqualification.' (citing *Faison v. Thornton,* 863 F.Supp. 1204, 1216 (D.Nev.1993), *overruled on other grounds,* 338 F.3d 981 (9th Cir.2003)). Nevertheless, "[p]articularly strict judicial scrutiny" should be given to a motion to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage. *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.,* 760 F.2d 1045, 1050 (9th Cir.1985) (citations omitted). The moving party bears the burden of establishing an ethical violation or other factual predicate upon which the motion depends. *See United States v. Walker River Irr. Dist.,* 2006 WL 618823(D.Nev.) (citing *Colyer v. Smith,* 50 F.Supp.2d 966, 967 (C.D.Cal.1999). Attorneys admitted to practice before this court must "adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this court." Local Rule (LR) IA 10-7(a).

In *IN-N-OUT Burger v. In & Out Tire & Auto, Inc.*, 2008 WL 2937294 *3 (D.Nev. 2008), Magistrate Judge Leavitt stated that "courts must prevent parties from misusing motions for disqualification as 'instruments of harassment or delay.'" (citation omitted). The court also stated that disqualification is "'a drastic measure which courts should hesitate to impose except when absolutely necessary.' *United States v. Titan Pac. Const. Corp.*, 637 F.Supp. 1556, 1562 (W.D. Wash 1986)." This Court evaluates Defendants' motion to disqualify Plaintiff's counsel in light of these general principles.

**1. Plaintiff Counsel's Alleged Improper Ex Parte Communication With Defendants' Former General Counsel.**

Defendants argue that Plaintiff's counsel Bret Whipple should be disqualified based on his allegedly unethical *ex parte* communication with the Water District's former general counsel George Benesch.

7

Rule 4.2 of the Nevada Rules of Professional Conduct states as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

In *Palmer v. Pioneer Inn Associates, Ltd.*, 118 Nev. 943, 59 P.3d 1237 (2002), the Nevada Supreme Court addressed how Rule 4.2 (formerly SCR 182) is to be applied to an employee of a corporation or other organization. The Court noted that the Nevada rule was adopted verbatim from the original version of ABA Model Rule 4.2. The Court further noted that the ABA comments to the Model Rules were not adopted by the Nevada Supreme Court, but can be consulted for guidance. *Palmer*, 118 Nev. at 949, 59 P.3d at 1241, citing former SCR 150(2) (current Rule 1.0A).

*Palmer* stated that the primary purposes of Rule 4.2 is to protect the attorney-client relationship from intrusion by opposing counsel. The rule protects parties from unprincipled attorneys and safeguards the attorney-client privilege. It also promotes effective representation of a client by routing communication with the other side through counsel who can present the information in a way most favorable to the client. *Palmer*, 118 Nev. at 948, 59 P.3d at 1240. The rule's protections undisputedly extend to organizational parties, who must act through their directors and employees. Therefore, at least some of the organization's agents must be viewed as the equivalent of a "party" for the rule to have any effect. The Court recognized, however, that there is a competing interest in more narrowly defining the employees subject to the rule in order to foster the use of informal discovery methods which promote the prompt resolution of disputes. A narrower definition also affords a reasonable opportunity for pre-litigation investigation to satisfy a party's obligations under Rule 11 of the Nevada Rules of Civil Procedure. *Id.* 118 Nev. at 948-49, 59 P.3d at 1240-41.

*Palmer* also noted that the comments to ABA Model Rule 4.2 were substantially revised in the 2002 to state as follows:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's

> lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. *Consent of the organization's lawyer is not required for communications with a former constituent.* If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of the organization, a lawyer must not use methods of obtaining information that violate the legal rights of the organization. See Rule 4.4.

*Palmer,* 118 Nev. at 949-50, 59 P.3d at 1241-42, quoting Model Rules of Prof'l Conduct R. 4.2 cmt. 7 (emphasis added).

After considering the various tests that have been adopted or recommended by other courts and commentators to determine which employees are parties within the meaning of Rule 4.2, the Court concluded that the managing-speaking agent test "best balances the policies at stake when considering what contact with an organization's representatives is appropriate." *Id.*, 118 Nev. at 960-61, 59 P.3d at 1247-48. The Court adopted a version of the "managing-speaking agent test" which does not incorporate either the former or present comments to Model Rule 4.2. Rather, the Court adopted the managing-speaking agent test set forth in *Wright by Wright v. Group Health Hospital*, 102 Wash.2d 192, 691 P.2d 564, 569 (1984) as follows:

> [T]he best interpretation of "party" in litigation involving corporations is only those employees who have the legal authority to "bind" the corporation in a legal evidentiary sense, *i.e.*, those employees who have "speaking authority" for the corporation. . . . It is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts. Rather, the rule's function is to preclude the interviewing of those corporate employees who have the authority to *bind* the corporation.
>
> . . . [E]mployees should be considered "parties" for purposes of the disciplinary rule if, under applicable state law, they have managing authority sufficient to give them the right to speak for, and bind, the corporation.

*Palmer*, 118 Nev. at 960-61, 59 P.3d at 1248.

The Court also made clear that "an employee does not 'speak for' the organization simply because his or her statement may be admissible as a party-opponent admission. Rather, the inquiry is whether the employee can bind the organization with his or her statement." *Id.* 118 Nev. at 961, 59 P.3d at 1248. The Court also stated, however, that in permissibly speaking with an employee

who is not a managing-speaking agent, the attorney must take care not inquire into or allow the employee to disclose confidential communications between the employee and the organization's counsel. *Id.* at note 65.

*Palmer* did not specifically address whether Rule 4.2 applies to former employees of a corporation or other organization. Comment 7 to ABA Model Rule 4.2 states that consent of the organization's lawyer is not required for communication with a former constituent. The majority of state and federal courts hold that Rule 4.2 does not apply to former employees. *See FleetBoston Robertson Stephans v. Innovex, Inc.*, 172 F.Supp.2d 1190, 1194 (D.Minn. 2001) (citing several federal district court decisions which follow the majority rule) and *P.T. Barnum's Nightclub v. Duhamell*, 766 N.E.2d 729, 734-35 (Ind.App. 2002) (citing both state and federal cases following the majority rule).

In *Continental Ins. Co. v. Superior Ct.,* 32 Cal.App.4th 94, 120, 37 Cal.Rptr.2d 843, 858-859 (1995), the court explained the reasons for the majority view:

> Several problems inhere in an approach that prohibits ex parte communication with former employees of a corporate adversary. First, such communication with a former employee does not effect an end-run around the protections afforded by the corporate attorney-client relationship. Clearly, ex parte communication with former employees cannot improperly influence settlement because such employees have no influence over the corporation's litigation strategy or over decisions to settle. Similarly, since the former employee is not involved in the corporation's attorney-client relationship, ex parte communication cannot undermine that relationship. Additionally, because the former employee no longer is an agent of the corporation, she cannot make revelations that bind the corporation as evidentiary admissions so that the concern about improvident statements is not implicated. Second, prohibiting ex parte contacts with former employees, like a blanket prohibition on such contact with present employees, unduly impedes the flow of information and unnecessarily increases the costs of litigation."
> (internal citation omitted).

Only a few courts generally prohibit contact with former employees of adverse parties. *Camden v. Maryland*, 910 F. Supp. 1115 (D. Md. 1996). Some courts have adopted a flexible approach under which the court evaluates whether a lawyer's contact with a former unrepresented employee of an adverse party is likely to result in the disclosure of privileged information to an opponent in litigation. *FleetBoston Robertson Stephans v. Innovex, Inc.*, 172 F.Supp.2d at 1195,

citing *Olson v. Snap Products, Inc.*, 183 F.R.D. 539, 544-45 (D. Minn. 1998).  *See also Spencer v. Steinman*, 179 F.R.D. 484, (E.D.Pa. 1998) (involving contact with a former attorney for the the opposing party); and *Heartland Surgical Speciality Hospital v. Midwest Division, Inc.*, 2007 WL 2122438 *1 (D.Kan. 2007).  In *P.T. Barnum's Nightclub*, the Indiana Court of Appeals declined to adopt this flexible approach.  The court stated that it was "guided primarily by the text of the rule which refers only to communications with 'a party.'  Former employees . . . are not parties to the litigation." 766 N.E.2d at 737.  The court also noted that there was no language in the comments to Rule 4.2 which suggested that it should be applied to former employees.

Because the Nevada Supreme Court has adopted a test which requires that an employee have managing authority sufficient to give him or her the right to speak for *and bind* the corporation, it is likely that the Court will also hold that Rule 4.2 does not apply to former employees.  As the comment to Model Rule 4.2 and *Palmer* indicate, Rule 4.4 prohibits an attorney from improperly invading the attorney-client privilege between a former employee and counsel for the organization.[3]  A "flexible" interpretation of Rule 4.2 which allows it to cover former employees based on the potential for improper disclosure of confidential information is therefore unnecessary.

Even if the Nevada Supreme Court adopts the flexible approach, however, Mr. Whipple's contact with Mr. Benesch did not violate Rule 4.2.  There is no evidence that Mr. Benesch had the right to bind the Virgin Valley Water District during the time he served as its general counsel. Although it is conceivable that the Water District's board may delegate certain binding authority to its managerial employees or agents, Defendants have not shown that such authority was conferred on either its former or current general counsel.  Thus, even if Mr. Benesch was still employed by the Water District, Plaintiff's counsel was not precluded from having "ex parte" communication with him.  There is also no evidence that Mr. Whipple solicited confidential attorney-client information from Mr. Benesch or that he disclosed such information to Mr. Whipple.  Mr.

---

[3] Rule 4.4 states that a lawyer "shall not use methods of obtaining evidence that violate the legal rights of [a third person]."

11

Benesch's role in negotiating or the drafting the lease agreement with Rebel Communication's counsel is not privileged confidential information. At the time Mr. Benesch communicated with the Water District's current general counsel and Mr. Whipple in July 2010, he was no longer counsel for the Water District. Mr. Benesch had no duty to maintain the confidentiality of his communications with the Water District's present counsel, unless those communications related to Mr. Benesch's prior confidential attorney-client communications as counsel for the Water District.

The Water District's current general counsel, Mr. Bingham, stated in the email he sent to Mr. Benesch on July 13, 2010 that "[o]ne of the Water District's defenses is that ambiguities in the lease agreement should be construed against Rebel." The Water District argues that this was confidential "trial strategy" information. If so, the Water District waived any allegedly confidentiality regarding this statement when it offered Mr. Wilbanks' testimony regarding his communications with Mr. Benesch in support of its opposition to the motion for preliminary injunction. In *Wardleigh v. District Court*, 111 Nev. 345, 354, 891 P.2d 1180 (1995), the Nevada Supreme Court stated that "where a party seeks an advantage in litigation by revealing part of a privileged communication, the party shall be deemed to have waived the entire attorney-client privilege as it applies to the subject matter of that which was partially disclosed."

The Court therefore concludes that Plaintiff's counsel did no engage in a prohibited *ex parte* communication with Mr. Benesch in violation of Rule 4.2. There is also no evidence that Mr. Whipple sought or that Mr. Benesch disclosed confidential attorney-client information to Mr. Whipple in violation of Rule 4.4.

The Court also notes that a violation of Rule 4.2 does not necessarily require the disqualification of counsel. In a case cited by Defendant, *Richards v. Holsum Bakery, Inc.*, 2009 U.S. Dist. LEXIS 109337 (D. Ariz. 2009), the court found that plaintiff's counsel had engaged in a prohibited *ex parte* communication with defendant's managerial employee and that the attorney had also initially attempted to conceal the communication from opposing counsel. The court nevertheless declined to disqualify plaintiff's counsel. The court stated that disqualification is an extreme sanction which should only be ordered after careful consideration of the client's right to counsel of her own choice and the nature and extent of the ethics violation. Because the

information obtained by the attorney was not material to the disposition of the case, the court concluded that disqualification was not warranted. Instead, the court imposed other sanctions on counsel.

Here, Mr. Whipple did nothing wrong in communicating with Mr. Benesch. He also promptly disclosed his contact with Mr. Benesch to Defendants and to the Court. The information that Mr. Benesch provided to Mr. Whipple was also relatively insubstantial. Mr. Benesch basically confirmed that the lease agreement was drafted by Rebel's counsel and that he proposed or made revisions to it. His objections to the accuracy of Mr. Wilbanks' characterizations of his statements were relatively minor. Thus, even if Mr. Whipple had engaged in a prohibited *ex parte* communication, the sanction of disqualification would not be justified.

During the hearing on this motion, the Court also raised Defendants' delay in filing the motion to disqualify as an additional factor that supports denial of the motion. *Nevada Yellow Cab Corp. v. District Ct.*, 123 Nev. 44, 49, 152 P.3d 737, 740-741 (2007) states, however, that delay, standing alone, is insufficient to establish waiver of a party's right to seek disqualification of opposing counsel. Although Defendants' delay in filing the motion arguably tends to show that it was filed for tactical advantage, in light of *Nevada Yellow Cab,* the Court does not base its denial of the motion to disqualify on Defendants' delay in filing the motion.

### 2. Plaintiff Counsel's Representation of The Water District's Former General Manager.

Defendants also argue that Mr. Whipple should be disqualified from representing Plaintiff in this action because of his representation of the Water District's former general manager, Michael Winters. The Water District did not cite any ethical rule to support Mr. Whipple's disqualification on this ground, but simply argued that "[t]his relationship adds suspicion to Mr. Whipple's involvement in this case as counsel for Plaintiff and cannot simply be dismissed as harmless. Mr. Whipple has already crossed the line of ethical conduct and this other relationship is further suspect." *Motion to Disqualify (#90)*, page 9. As stated above, however, Mr. Whipple's contact and communication with Mr. Benesch was not improper.

. . .

13

Defendants Smith and Gustaveson argue that Mr. Whipple should be disqualified pursuant to Rule 1.9 of the Nevada Rules of Professional Conduct. *See Joinder and Supplement to the Motion to Disqualify Plaintiff's Counsel (#91)*, page 4. Rule 1.9 states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 1.9 clearly does not apply to the facts of this case. For a potentially disqualifying conflict to exist under this rule, the party seeking disqualification must establish (1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) the current matter is adverse to the party seeking disqualification. *Nevada Yellow Cab Corp. v. District Ct.*, 123 Nev. 44, 50, 152 P.3d 737, 741 (2007); *Hackett v. Feeney*, 2010 WL 4102911 *4 (D.Nev. 2010). There is no assertion that Mr. Whipple has ever had an attorney-client relationship with Defendants Virgin Valley Water District, Robert "Bubba" Smith or Karl Gustaveson. The only basis upon which Defendants could invoke Rule 1.9 would be if Mr. Whipple's representation of Mr. Winters constituted an indirect or implied representation of the Defendants. Mr. Whipple's representation of Mr. Winters during his termination hearing was essentially adverse to the Water District. His role was to protect Mr. Winters' due process rights and to argue that the board should not terminate Mr. Winters. Mr. Whipple's representation of Mr. Winters in regard to the criminal investigation or charges against him was also essentially adverse to the Water District. Mr. Winters is charged with misconduct of a public officer in violation of Nevada Revised Statute (NRS) Section 197.110. Such conduct, if proven, is inimical to the interests of the Water District and its board of directors. Accordingly, Rule 1.9 is not grounds for Mr. Whipple's disqualification.

This does not mean that Defendants do not have a legitimate concern regarding Mr. Whipple's attorney-client relationship with Mr. Winters. As Defendants point out, Mr. Winters executed the April 2007 lease agreement with Rebel Communications on behalf of the Water District, and it is reasonable to infer that he engaged in confidential communications with the Water District's counsel during the negotiations. It is less clear what role Mr. Winters had, if any,

in the events leading up to the filing of the instant lawsuit. Mr. Winters' employment was terminated on February 2, 2010, which occurred prior to the Water District's settlement with the BLM on or about February 22, 2010 and its notification to the BLM on February 25, 2010 that it had terminated its relationship with Rebel. These potential matters, however, were alluded to during Mr. Winters' February 2, 2010 termination hearing. *Defendants' Joinder (#91)*, *Exhibit 1, Minutes*, pages 2-3. It is therefore possible that Mr. Winters was involved in confidential attorney-client discussions about these matters prior to the termination of his employment. It also appears that Mr. Whipple still had some attorney-client relationship with Mr. Winters up to June 19, 2010 when he apparently spoke with a newspaper reporter about Mr. Winters' indictment.

Mr. Whipple is not subject to disqualification or other sanctions, however, unless it is shown that Mr. Winters has, in fact, disclosed the Water District's confidential attorney-client or other privileged information to him. This situation is distinguishable from that which applies in regard to disqualification under Rule 1.9. In *Coles v. Arizona Charlie's*, 973 F.Supp. 971, 974 (D.Nev. 1997), the court stated that disqualification is warranted under Nevada Supreme Court Rule 159 (now Rule 1.9) when the current adverse representation and prior representation are substantially related. "A matter is substantially related to a prior matter 'if the factual contexts of the two representations are similar or related, regardless of whether confidences were in fact imparted to the lawyer by the client in the prior representation.'" *Id. Coles* further stated that "'[i]n proving that a prior representation is substantially related to the present, the moving party is not required to divulge the confidences actually communicated, nor should a court inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation.... The court should instead undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that would be harmful to the client in the later matter.'" *Coles*, 973 F.Supp. at 974, quoting, *Robbins v. Gillock*, 10 Nev. 1015, 1018, 862 P.2d 1195 (1993). Stated otherwise, the prior representation gives rise to a presumption that the lawyer acquired confidential client information during that representation.

The presumption under Rule 1.9 is arguably rebuttable. In *Edwards v. 360° Communications*, 189 F.R.D. 433, 438-39 (D.Nev. 1999), the court noted that the ABA comments

to Rule 1.9 support a "functional approach" which looks to whether confidences were actually disclosed to the attorney. *Edwards* stated that "[a]pplication of a per se rule of disqualification is . . . now a disfavored practice and should be replaced by a functional analysis that applies a rebuttable presumption of attorney knowledge." *Id.*, at 439, citing *SLC Ltd. V v. Bradford Group West, Inc.*, 999 F.2d 464, 468 (10th Cir. 1993). The holding in *Edwards* was limited to a lawyer who had previously been an associate in the law firm which represented the defendant. After the lawyer left that firm, he became plaintiff's counsel in the same lawsuit. The court held that the lawyer could rebut the presumption that he received confidential information by showing that he had no involvement with the lawsuit and acquired no information about it during the time he was a member of the law firm representing the defendant. *Id.*

In *Neal v. Health Net, Inc.*, 100 Cal.App.4th 831, 123 Cal.Rptr.2d 202 (Cal.App. 2002), the court rejected an attempt to apply the presumption under the California's version of Rule 1.9 to the situation in which a party's attorney also represents another individual who is or was an employee of the opposing party and has or may have confidential information relevant to the lawsuit. The attorney in that case represented the plaintiff, Ms. Neal, in a discrimination lawsuit against her former employer, Health Net. Ms. Brockett, who was employed as a secretary in Health Net's legal department, reviewed Health Net's confidential litigation file regarding Ms. Neal's lawsuit. Shortly thereafter, Brockett hired Neal's attorney to represent her in her own discrimination claim against Health Net. Both Brockett and the attorney denied that she disclosed any confidential information about Neal's lawsuit to him. In denying the motion to disqualify Neal's attorney, the court stated:

> In terms of the presumption of possession of confidential information, the present case is entirely different. Ms. Brockett is not an attorney. Ms. Brockett has not become affiliated with Mr. Traylor, plaintiff's attorney, as a legal secretary to a partner, an associate, in any of counsel capacity, a law clerk, or paralegal. Ms. Brockett is a *client*. The Supreme Court has never held that the presumption of possession of confidential information and the *automatic* disqualification rule applies when a non-lawyer client who may have access to privileged matters retains an attorney. In the absence of a constitutional provision, statute, regulation, direction from the Supreme Court, or other proper jurisprudential ground, we decline to adopt such a rule.

*Neal*, 100 Cal.App.4th at 841, 123 Cal.Rptr.2d at 210.

The court stated that litigants who are concerned that privileged or confidential information may be disclosed by their former employees should seek an appropriate protective order. *Neal*, 100 Cal.App.4th at 850, 123 Cal.Rptr.2d at 217.

A court may disqualify an attorney for violating Rule 4.4. where the evidence supports a finding that the attorney has acquired confidential attorney-client information from an employee or former employee of the opposing party. *See Arnold v. Cargill*, 2004 WL 22022410 (D.Minn. 2004) (attorneys disqualified where high level managerial employee turned over employer's privileged and confidential documents to them) and *Richards v. Jain*, 168 F.Supp.2d 1195 (W.D.Wash. 2001) (attorneys disqualified where defendant's former employee provided attorneys with employer's privileged and confidential documents). Even where a violation of Rule 4.4 has occurred, however, disqualification is not automatic. In *Myers v. Porter*, 130 P.3d 1023, 1027 (Colo. 2006), the Colorado Supreme Court stated as follows:

> Under particular circumstances, obtaining information in violation of the legal rights of an opposing party may well require an attorney's disqualification; but standing alone, even an actual violation of Rule 4.4 would be insufficient to support such an order. Disqualification as a remedy for such an impropriety, even where privileged information is actually involved, must turn on a host of other considerations, including the flagrancy of the attorney's conduct; the sensitivity of the information and its relevance to the particular proceedings; and the prejudice to be suffered by the non-moving party. *See, e.g., In re Meador,* 968 S.W.2d 346, 351-52 (Tex.1998) (articulating a range of factors to be considered in determining whether justice requires disqualification of attorney who has been privy to improperly obtained privileged attorney-client communications of other party).

Mr. Whipple is not subject to disqualification in this case based solely on his somewhat concurrent attorney-client relationship with Mr. Winters. Nor is there a presumption, rebuttable or otherwise, that Mr. Whipple has received confidential information about this lawsuit from Mr. Winters. Defendants have not produced any evidence to support a finding that Mr. Winters has disclosed such information to Mr. Whipple. For his part, Mr. Whipple states that during his representation of Mr. Winters he did not acquire any protected information (relevant to this lawsuit) and that the only information he learned about the Water District as a result of that representation

was during the public comment at the personnel hearing. *Opposition to Motion to Disqualify (#92), Whipple Affidavit*, ¶ 8. Based on this record, no grounds exist for Mr. Whipple's disqualification based on his representation of Mr. Winters. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Virgin Valley Water District's Motion to Disqualify Plaintiff's Counsel (#90) and Defendants Smith and Gustaveson's Joinder and Supplement to the Motion to Disqualify Plaintiff's Counsel (#91) are **denied**.

DATED this 15th day of February, 2011.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE