1

2

3

4

5

6                             UNITED STATES DISTRICT COURT

7                                   DISTRICT OF NEVADA

8                                           * * *

9    REBEL COMMUNICATIONS, LLC,          )
                                         )
10                    Plaintiff,         )          2:10-CV-0513-LRH-GWF
                                         )
11     v.                                )
                                         )          ORDER
12   VIRGIN VALLEY WATER DISTRICT;       )
     *et al.*,                           )
13                                       )
                      Defendants.        )
14   _____ )

15         Before the Court are three Motions for Summary Judgment regarding the obligations and

16   boundaries of certain contracts to build telecommunications towers in Clark County, Nevada.

17   Defendant the City of Mesquite ("the City") filed the first Motion for Summary Judgment.  Doc.

18   #192.[1]  Plaintiff Rebel Communications, LLC ("Rebel") filed an Opposition (Doc. #208), to which

19   the City replied (Doc. #226).  Defendant Virgin Valley Water District ("VVWD") filed a Motion

20   for Partial Summary Judgment.  Doc. #193.  Rebel filed an Opposition (Doc. #196), to which

21   VVWD replied (Doc. #210).  Rebel also filed a Motion for Partial Summary Judgment.  Doc. #194.

22   VVWD filed an Opposition (Doc. #206), to which Rebel replied (Doc. #228).

23         Also before the Court is Defendants' Motion to Exclude Opinions and Testimony of

24   Rebel's expert Eric C. Frye.  Doc. #198; Doc. #200.  Rebel filed an Opposition (Doc. #215), to

25   which Defendants replied (Doc. #220; Doc. #221).

26

_____

        [1] Refers to the Court's docket number

I.     **Facts and Procedural Background**

    **A.  White Rock Site**

In 2005, the City decided to build a communications tower to ensure that city departments could maintain access to radio communications.  In May 2006, the City paid Rebel to conduct a coverage study to determine the best location for the tower, taking into account that the tower would be utilized by multiple city departments.  Rebel and the City determined that a location referred to as the "white rock site" would be ideal for the communications tower.  This site was managed by VVWD pursuant to a right of way agreement with the Bureau of Land Management ("BLM") dated August 24, 1999.  After Rebel completed its coverage study, the City, on February 8, 2007, drafted a Request for Proposal for construction of a City-owned communications tower at the white rock site.

On March 6, 2007, Rebel principal Cody Whipple ("Whipple") presented a proposal to VVWD to construct a Rebel-owned communications tower at the white rock site.  Rebel and VVWD entered into a Lease of Real Property for Telecommunication Tower on April 15, 2007.  The lease agreement stated an obligation for Rebel to "comply with all statutes, ordinances, regulations, and requirements of all federal, state, county, and local governmental entities."  Doc. #192, Ex. 18 at 3.  The lease agreement also represented that the white rock site was "not subject to any administrative order, judgment or decree, including any order concerning wetlands or endangered or threatened species," and stated that VVWD could not enter into "any leases or agreements affecting the leasing or management of the Improvements without [Rebel's] consent."  *Id.* at 5-6.  Rebel states that it was never informed that the land encompassing the white rock site was actually owned by the BLM.  The lease agreement does not state that BLM owns the land, but Section 24 discusses the situations in which the BLM could terminate the agreement.[2]

///

---

[2] The lease agreement included an integration clause, stating that it contained "the entire understanding of the parties."  Doc. #192, Ex. 18 at 4-5.

2

1    In November 2007, Whipple approached Mesquite's City Manager Tim Hacker ("Hacker")

2  to inquire whether the City wanted to lease space on its communications tower at the white rock

3  site.  After months of discussion and review of a cost-benefit analysis, on January 25, 2008, the

4  City told Rebel that it would not lease space on the white rock site from Rebel.  The BLM did not

5  learn about Rebel's construction of a communications tower at the white rock site until early 2008,

6  and at that time informed VVWD that this construction violated the VVWD's limited right of way

7  at the site.

8    On April 29, 2008, the BLM issued a cease and desist order concerning Rebel's

9  communications tower at the white rock site.  On June 17, 2008, the BLM issued Rebel a trespass

10  notice for unauthorized construction of a communications tower at the white rock site.  The

11  trespass notice advised Rebel that it had committed two violations: (1) occupancy of public land

12  without authorization, lease, or right of way for the purpose of establishing a communications

13  facility; and (2) construction of a communication facility within an Area of Environmental Concern

14  ("ACEC").  *Id.*, Ex. 10.  The notice requested that Rebel remove the tower, and all equipment

15  associated with it, and apply for a communications site outside of the ACEC.  *Id.*

16    On February 14, 2008, the VVWD requested an amendment to its right of way to allow for

17  a communications tower.  This request noted that the tower at the white rock site would be

18  "operated by VVWD with no commercial uses occurring," and that the tower would be "shared by

19  public safety and critical infrastructure providers in public sectors and all levels of government."

20  *Id.*, Ex. 4.  In February 2010, the BLM and VVWD reached a settlement agreement that expanded

21  VVWD's right of way and permitted the communications tower to remain only if full ownership

22  remained with VVWD.  On February 9, 2010, the BLM provided Rebel a one-month extension of

23  time to remove its communications tower at the white rock site.  On February 22, 2010, the VVWD

24  board voted to terminate the white rock site lease agreement between Rebel and VVWD.

25  ///

26  ///

3

**B.  Scenic Tank Site**

On February 19, 2008, VVWD approved the City's request to construct a communications tower at another location referred to as the "scenic tank site."  In March 2008, VVWD informed the City that it could not approve a tower at the scenic tank site until the BLM made a final decision about Rebel's tower on the white rock site.  *Id.*, Ex. 6.  The VVWD referred the City to the BLM for discussion of its rights, and on May 1, 2008, the City and VVWD entered into an agreement for construction of a communications tower at the scenic tank site.  On September 26, 2008, the City and BLM entered into a communication use agreement for a communications tower at the scenic tank site.  The City's agreements with VVWD and the BLM limited the City's use of the scenic tank tower to the City's fire and safety departments, and prohibited the City from leasing or renting the scenic tank site to any other entity, public or private.  In April 2010, the City requested that VVWD agree to an amendment of its cooperative agreement for use of the scenic tank site to permit other public entities to use the communications tower.  This request was approved on May 4, 2010.  Thereafter, the City negotiated cooperative agreements and interlocal agreements with Clark County, the Las Vegas Metropolitan Police Department, and the State of Nevada.

**C.  Procedural Background**

Rebel filed a Complaint against Defendants on April 9, 2010, and an Amended Complaint on September 24, 2010.  Doc. #1; Doc. #70.  The Amended Complaint alleges thirteen causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraudulent inducement; (4) intentional interference with contractual relations; (5) intentional interference with prospective economic advantage; (6) procedural due process violations under 42 U.S.C. § 1983; (7) civil conspiracy; (8) concert of action; (9) inverse condemnation; (10) pre-condemnation; (11) conversion; (12) declaratory relief; and (13) takings clause violation under 42 U.S.C. § 1983.  Doc. #70.  On March 20, 2012, the Court granted Defendants' Motion to Dismiss as to individual defendants Robert Smith, Karl Gustaveson, and Timothy R. Hacker.[3]  Doc. #116.

---

[3] The Court denied Rebel's Motion for Reconsideration on August 1, 2012.  Doc. #128.

1    On September 5, 2013, VVWD filed a Counterclaim for declaratory judgment on all of Rebel's

2    state law claims.  Doc. #172.  The parties filed the present Motions for Summary Judgment on

3    February 2, 2015 (Doc. #192; Doc. #193; Doc. #194), and VVWD filed its Motion to Exclude

4    Expert Testimony on February 19, 2015 (Doc. #198).

5    **II.    Legal Standard**

6           Summary judgment is appropriate only when the pleadings, depositions, answers to

7    interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record

8    show that "there is no genuine issue as to any material fact and the movant is entitled to judgment

9    as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the

10   evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the

11   light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

12   *Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154

13   (9th Cir. 2001).  A motion for summary judgment can be complete or partial, and must identify

14   "each claim or defense—or the part of each claim or defense—on which summary judgment is

15   sought." Fed. R. Civ. P. 56(a).

16          The party moving for summary judgment bears the initial burden of informing the court of

17   the basis for its motion, along with evidence showing the absence of any genuine issue of material

18   fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the

19   burden of proof, the moving party must make a showing that no "reasonable jury could return a

20   verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On

21   an issue as to which the nonmoving party has the burden of proof, however, the moving party can

22   prevail merely by demonstrating that there is an absence of evidence to support an essential element

23   of the non-moving party's case. *Celotex*, 477 U.S. at 323.

24          To successfully rebut a motion for summary judgment, the nonmoving party must point to

25   facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson*

26   *Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).  A "material fact" is a fact "that might affect

the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248.  Where

reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.

*See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of

the party's position is insufficient to establish a genuine dispute; there must be evidence on which a

jury could reasonably find for the party.  *See id.* at 252.  "[S]peculative and conclusory arguments

do not constitute the significantly probative evidence required to create a genuine issue of material

fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

When considering cross-motions for summary judgment, courts "must review the evidence

in support of each cross-motion." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*,

249 F.3d 1132, 1136 (9th Cir. 2001).  However, in determining whether to grant or deny summary

judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."

*Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted).  Rather, a

court is entitled to rely on the nonmoving party to "identify with reasonable particularity the

evidence that precludes summary judgment." *Id.*

## III.   Discussion

### A.  The City's Motion for Summary Judgment

Rebel alleged four claims against the City: (1) intentional interference with contractual

relations; (2) intentional interference with prospective economic advantage; (3) civil conspiracy;

and (4) concert of action.  Doc. #70.  The City moves for summary judgment on all four of these

claims.  Doc. #192 at 1.

### 1.    Intentional Interference Claims

The City argues that Rebel cannot prevail on its intentional interference claims because any

contract between Rebel and VVWD was not valid, and even if it were, Rebel cannot establish that

the City had an improper tortious motive.  Rebel argues that the City has not established that the

1  undisputed material facts show that the City did not intend to act in a manner that would harm

2  Rebel, or that the City's actions were not tortious.

3       To prevail on a claim for intentional interference with contractual relations in Nevada, "a

4  plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the

5  contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual

6  disruption of the contract; and (5) resulting damage." *J.J. Indus. LLC v. Bennett*, 71 P.3d 1264,

7  1267 (Nev. 2003). Additionally, "the plaintiff must establish that the defendant had a motive to

8  induce breach of the contract with the third party." *Id.* at 1268 (citing *Nat'l Right to Life Political*

9  *Action Comm. v. Friends of Bryan*, 741 F. Supp. 807, 814 (D. Nev. 1990)). An actor's

10 "interference with the other's prospective contractual relation is intentional if the actor desires to

11 bring it about or if he knows that the interference is certain or substantially certain to occur as a

12 result of his action." *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 792

13 P.2d 386, 388 (Nev. 1990) (citing Restatement (Second) Torts § 766B (1979)). To determine

14 whether a defendant's interference is improper, courts consider:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the
> other with which the actor's conduct interferes, (d) the interests sought to be advanced
> by the actor, (e) the social interests in protecting the freedom of action of the actor
> and the contractual interests of the other, (f) the proximity or remoteness of the actor's
> conduct to the interference and (g) the relations between the parties.

18 *Nationwide Trans. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1055 n.3 (9th Cir. 2008) (quoting

19 Restatement (Second) of Torts § 767).

20      Rebel raises a number of facts that it contends indicates that the City had an improper

21 motive to interfere with its existing contract and prospective economic advantage, including: (1)

22 the City dragged its feet for years before deciding to build a communications tower; (2) no member

23 of the City, including Hacker, expressed concerns about the BLM's power over the white rock site;

24 (3) the City demanded ownership of the white rock site in December 2007; (4) Whipple was

25 warned about Hacker's motives; (5) the BLM only investigated Rebel's tower at the white rock site

26 after the City threatened to exert its ownership; and (6) BLM and VVWD worked for months to

7

cure Rebel's trespass and allow Rebel to manage the white rock site.  Doc. #208 at 17-18.  Rebel

also raises facts to dispute the City's arguments that Rebel's management of the communications

tower at the white rock site could be unsafe or prohibitively expensive, including: (1) that Hacker

did not contest Rebel's management of the white rock site until Whipple denied the City

ownership; (2) the white rock site is in fact professionally managed; (3) Rebel's management of the

white rock site was acceptable to the VVWD; and (4) BLM's trespass notice did not involve safety

violations, but rather VVWD's right of way involving a potential area of environmental concern.

*Id.* at 18.

The City argues that Rebel's intentional interference claim must fail because the contract

between VVWD and Rebel was not valid.  In particular, the City emphasizes that Rebel failed to

obtain permission from the BLM—or acquire other required permits—to build its communications

tower despite knowledge that the white rock site included public land.  Although this was arguably

deficient,[4] the Court previously stated that "[a] claim for interference with prospective economic

advantage does not require the existence of a valid contract."  Doc. #69 at 3 (citing *Korea Supply

Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 953 (Cal. 2003)).  The Court finds again that even if

the VVWD/Rebel contract was invalid, this would not extinguish a claim for intentional

interference against the City.

The City argues convincingly that it decided to build its own tower for practical and

economic reasons—mainly that it would be cheaper for the City to operate its own tower—not

based on a motive to interfere with Rebel's contract with the VVWD.  However, Rebel has

identified evidence to create a genuine dispute of material fact as to whether the City had an

_____

[4] Although the lease agreement does not explicitly state that Rebel had an obligation to request permission from the BLM, it did state that Rebel had to "comply with all statues, ordinances, regulations, and requirements of all federal, state, county, and local government entities."  Doc. #193, Ex. A at 3.  Additionally, Rebel claims that VVWD represented that it was the owner of white rock site, but the lease agreement provided that "if the BLM terminates [VVWD's] permit covering the premises, the BLM shall succeed to the right, title, and interest of [VVWD] hereunder, and the BLM shall have the unilateral right to terminate this Agreement any time thereafter."  *Id.* at 6.

improper motive and took affirmative steps to influence the BLM to take actions that would dissolve the VVWD/Rebel contract.  First, Whipple testified that Hacker demanded full ownership of the white rock site, and indicated that he would attempt to agitate Rebel's relationship with the VVWD and BLM if Rebel did not comply.  Doc. #207, Ex. 1(b) at 207:7-15.[5]  Second, Rebel contends that the City was "well aware" that the Rebel/VVWD contract provided that VVWD needed to obtain Rebel's consent before entering into a contract for any competing telecommunications facility largely because Robert "Bubba" Smith ("Smith"), a former director of the VVWD and member of the Mesquite City Counsel, raised the issue of repudiating the lease agreement with the VVWD board on April 15, 2008.  *Id.*, Ex. 3 at 79:17-80:13.  Third, Michael Johnson ("Johnson"), a former VVWD employee, stated that Hacker "wanted to control the water system in Virgin Valley" and that Hacker directed Smith to contact the BLM and interested parties regarding control of the water system in Virgin Valley.  *Id.*, Ex. 18 at 1-2.[6]

The Court finds that although the City has raised a legitimate motive for its decision to build its own communications tower, Rebel has presented evidence to create a genuine dispute regarding whether the City's actions were fueled by motive to interfere with Rebel's contract with the VVWD.  Accordingly, the Court denies the City's Motion for Summary Judgment as to Rebel's claims for intentional interference with contract and prospective economic advantage.

### 2.    Civil Conspiracy and Concert of Action

The City argues that Rebel's civil conspiracy and concert of action claims are barred by the intracorporate conspiracy doctrine, which provides that "[a]gents and employees of a corporation

---

[5] Rebel contends that this ultimatum was confirmed by the City's Public Works Director William Tanner, but this is not supported by the cited portion of Tanner's deposition.  In the cited portion of his deposition, Tanner describes his understanding of the ultimatum: that if the site "hasn't been permitted through the governing agencies then the City of Mesquite is not interested in being on that tower and we're going to build our own tower."  Doc. #207, Ex. 6 at 49:4-19.

[6] Rebel raised additional issues of fact—mostly based on circumstantial evidence—that it contends support its claim for intentional interference.  *See* Doc. #207 at 7-11.  The Court need not discuss every stated issue of fact to determine that genuine disputes of material fact exist that preclude summary judgment.

cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not individuals for their individual advantage." *Collins v. Union Fed. Sav. & Loan Ass'n* , 662 P.2d 610, 622 (Nev. 1983).  Rebel argues that the intracorporate conspiracy doctrine does not apply because the operative agreement was between the City and VVWD, not merely between the City's employees.

To establish a concert of action claim in Nevada, plaintiff must establish that defendants "agreed to engage in conduct that is inherently dangerous or poses a substantial risk of harm to others." *GES, Inc. v. Corbitt*, 21 P.3d 11, 14-15 (Nev. 2011).  "Concert of action resembles the tort of civil conspiracy." *Id*. at 15.  "Both causes of action require an agreement.  To prevail in a civil conspiracy action, a plaintiff must prove an agreement between the tortfeasors, whether explicit or tacit." *Id.* (internal citations omitted).  "Proof of an agreement alone is not sufficient, however, because it is essential that the conduct of each tortfeasor be in itself tortious." *Id.*

The Court finds as a matter of law that Rebel's concert of action claim against the City must fail because no reasonable juror could find that the City's conduct—entering into a contract with VVWD to build a communications tower—was inherently dangerous or posed a substantial risk of harm to others.  *See Tai-Si Kim v. Kearney*, 838 F. Supp. 2d 1077, 1092-93 (D. Nev. 2012) (granting defendants' motion for summary judgment on a concert of action claim because "[e]ngaging in a real estate transaction is not inherently dangerous and does not pose a substantial risk of harm to others").[7]  Accordingly, the Court grants the City's Motion for Summary Judgment as to Rebel's concert of action claim.

///

---

[7] Traditionally, this tort is "quite narrow," as its "classic application is in the drag-racing context where one driver is the cause-in-fact of the plaintiff's injury and another racer bears culpability, too." *Fakoya v. County of Clark*, No. 2:12-cv-2149, 2014 WL 5020592, at *8 (D. Nev. Oct. 8, 2014) (citing *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 111-12 (Nev. 1998), *overruled on other grounds* by *Corbitt*, 21 P.3d at 15.  The Nevada Supreme Court added that this tort was designed to "deter antisocial or dangerous behavior" and that application of the tort "is largely confined to isolated acts of adolescents in rural society." *Mahlum*, 970 P.2d at 111 (internal citations omitted).

However, the Court finds that Rebel has produced evidence to raise a genuine dispute as to whether the City could be liable for civil conspiracy.  "To establish a claim for civil conspiracy, a plaintiff must establish: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort." *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1278 (D. Nev. 2014) (citing *Corbitt*, 21 P.3d at 15).  As discussed above, the Court has denied the City's Motion as to Rebel's claim for intentional interference with contract or prospective business relations.  Rebel has raised a dispute of fact as to whether the City and VVWD entered into an agreement to undermine the Rebel/VVWD contract.  Specifically, Rebel states that Smith, a former VVWD director and member of the City's board, raised the issue of VVWD repudiating the Rebel lease agreement with the rest of the VVWD board at an April 15, 2008, meeting.  Doc. #207, Ex. 3 at 79:17-80:13.  Additionally, Johnson, a former VVWD employee, stated that Hacker took affirmative steps to agitate Rebel's lease agreement.  *Id.*, Ex. 18 at 1-2.  Thus, Rebel has established a dispute regarding commission of an underlying tort, and an agreement to commit that tort.

The City argues that the intracorporate conspiracy doctrine bars Rebel's claim for civil conspiracy because a plaintiff cannot recover for an alleged conspiracy between a government agency and its employees acting within the scope of their employment.  *See Nanopierce Techs., Inc. v. Depository Trust and Clearing Corp.*, 168 P.3d 73, 85 n.49 (Nev. 2007) (quoting *Lexalt v. McClatchy*, 622 F. Supp. 737, 745-46 (D. Nev. 1985)) ("[B]ecause respondents are a parent company and its subsidiaries, they have no separate legal existence; thus it appears 'impossible for a civil conspiracy to have occurred.'").  However, it appears that Rebel's claim for civil conspiracy is based not on an agreement between the City and its agents, but rather on an alleged agreement between the City and VVWD to take action to undermine Rebel's lease of the white rock site.  As discussed above, Rebel has identified evidence that VVWD knew that the City wanted to disrupt Rebel's contract, and may have worked with the City to facilitate this disruption.  Additionally, in an email from Robycn, LLC, a consulting company the City hired to work with the BLM, Robycn

///

partners Barry Stubbs and Mike Ford[8] stated that as a result of communications with the VVWD regarding its right of way, Rebel might be "out of the picture."  Doc. #207, Ex. 13.

Rebel has established that a genuine dispute of material fact remains as to whether the City is liable for the underlying intentional interference torts, and that the City may have conspired with the VVWD to commit those torts.  Accordingly, the Court denies the City's Motion as to Rebel's civil conspiracy claim.

**B.  VVWD's Motion for Partial Summary Judgment**

VVWD moves for summary judgment on its counterclaim for declaratory judgment, and Rebel's claims for fraudulent inducement, breach of contract, breach of the implied covenant of good faith and fair dealing, civil conspiracy, concert of action, conversion, and intentional interference with prospective economic advantage.  Doc. #193.

**1.  Declaratory Judgment**

VVWD seeks a declaratory judgment that, under the Lease Agreement, Rebel "was responsible for compliance with requirements of the BLM for the intended use of the tower; that Rebel breached the Lease Agreement by failing to take steps to comply with requirements of the BLM for advance approval; and that Rebel is liable for the District's damages caused by the breach."  Doc. #196 at 5.  Rebel argues that VVWD is not entitled to declaratory judgment because any actions that the VVWD interprets as a breach of the contract were a result of the VVWD's false representation regarding the contract to Rebel.

The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Under this Act, a court may grant declaratory relief "in a case . . . within its jurisdiction."  *Id*.  Thus, federal jurisdiction under the Declaratory Judgment Act implicates the usual requirements of federal subject matter jurisdiction, including the necessity of a "case or controversy" justiciable under Article III of the U.S. Constitution.  *See MedImmune*

---

[8] Ford is a former Deputy Director of the BLM in the state of Nevada.  Doc. #207, Ex. 28.

*Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).  A justiciable case or controversy exists if there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id*. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Lease Agreement states: "At its own cost, [Rebel] shall comply with all statutes, ordinances, regulations, and requirements of all federal, state, county, and local government entities insofar as they relate to the use of the premises on which the Improvements are placed."  Doc. #193, Ex. A at 3.  VVWD states that this language indicates that Rebel had the responsibility to ensure that its actions on the white rock site complied with the BLM's requirements, and all other regulations.  Rebel counters that VVWD represented that it owned the white rock site, and warranted that the leased portions were not subject to any administrative or regulatory guidelines concerning wetlands or endangered species.  Indeed, Section 21(e) of the Lease Agreement states that the property is "not subject to any administrative order or any judgement or decree, including any order concerning wetlands or endangered or threatened species."  Doc. #193, Ex. A at 5.

Reading the lease agreement in its entirety, it is not likely that Rebel was completely unaware that the land was owned by the BLM; Section 24 of the agreement states that "if the BLM terminates [VVWD's] permit covering the premises, the BLM shall succeed to the right, title, and interest of Lessor hereunder, and the BLM shall have the unilateral right to terminate this Agreement at any time thereafter."  Doc. #193, Ex. A at 6.  However, the question before the Court is whether failure to request permission from the BLM to build a communications tower constituted a breach of the lease agreement.  The Court finds that the contract is ambiguous because it states that Rebel had an obligation to comply with all statutes and ordinances, but also that Rebel "shall construct a separately fenced and accessed telecommunication tower," and that VVWD had authority to execute the agreement.  *Id.* at 2, 5.  Accordingly, the Court denies VVWD's Motion for Summary Judgment on its claim for declaratory judgment.

///

### 2.      Fraudulent Inducement

Rebel argues that the lease agreement with VVWD included four misrepresentations that support Rebel's claim for fraudulent inducement: (1) VVWD had the authority to enter into the lease agreement; (2) the white rock site was "not subject to any administrative order or any judgment or decree, including any order concerning wetlands or endangered or threatened species"; (3) VVWD was prohibited from entering into any other leases or agreements without Rebel's consent; and (4) VVWD's right of way allowed for the construction of a communications tower. VVWD argues that the Court should grant summary judgment on its claim for fraudulent inducement because its representations in the lease agreement were either not fraudulent, or did not improperly intend to induce reliance.

To establish a claim for fraudulent inducement, the plaintiff must prove by clear and convincing evidence: (1) false representation by the defendant; (2) defendant's knowledge or belief that the representation was false; (3) defendant's intention to induce plaintiff to consent to the contract's formation; (4) plaintiff's justifiable reliance on the misrepresentation; and (5) damage resulting from defendant's reliance. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). Fraud "is never presumed; it must be clearly and satisfactorily proved." *Id.* (quoting *Havas v. Alger*, 461 P.2d 857, 860 (Nev. 1969)).

Although it appears that at least one representation by VVWD in the lease agreement was false, Rebel has not identified more than a scintilla of evidence that VVWD had knowledge of any such misrepresentation when the agreement was formed, or that VVWD intended to induce Rebel's reliance based on these misrepresentations. First, Rebel has not identified any evidence that VVWD knew that its right of way did not permit leasing the white rock site to Rebel. In fact, VVWD's original right of way permit with the BLM does not state that VVWD did not have authority to lease the property to third parties. *See* Doc. #193, Ex. B. Second, Rebel states that VVWD's chief hydrologist Michael Johnson was aware "that leased portions of the White Rock Site were actually subject to a BLM restriction, which identified the White Rock Site as an area of

critical environmental concern." Doc. #210 at 5.  However, in the portion of the deposition identified by Rebel, Johnson notes that he was aware that the white rock site was an area of environmental concern on April 17, 2008, approximately one year after VVWD and Rebel entered into the lease agreement—on April 15, 2007.  *See* Doc. #195, Ex. 6 at 43:1-15.[9]  Rebel has not identified any evidence that VVWD was aware of this information at the time the lease agreement was signed.  Third, whether VVWD entered into leases or agreements without Rebel's consent in contravention of the lease agreement is relevant to Rebel's breach of contract claim, not its fraudulent inducement claim.

Based on the foregoing, Rebel has not identified more than a scintilla of evidence that VVWD knew that alleged misrepresentations in the lease agreement were false, or that VVWD made such misrepresentations to induce Rebel's reliance.  *See Liberty Lobby*, 477 U.S. at 252.  Accordingly, the Court grants VVWD's Motion as to Rebel's fraudulent inducement claim.

### 3.   Breach of Contract

VVWD argues that it cannot be liable for breach of contract based on the lease agreement because any alleged damages were caused by Rebel's own initial breach.  Rebel contends that VVWD's argument is conclusory, and points to disputed and undisputed evidence that it claims supports that VVWD should be held liable for breach of contract.

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) a breach by the defendant; and (4) damages resulting from defendant's breach.  *See* Restatement (Second) of Contracts § 203 (2007); *see also Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)).  "Whether a party has breached a contract and whether the breach is material are questions of fact."  *Las Vegas Sands, LLC v.*

---

[9] It appears that Rebel inadvertently omitted the relevant pages—42 and 43— of Johnson's deposition from its exhibits in opposition to VVWD's Motion.  *See* Doc. #210, Ex. 6.  However, page 43 of Johnson's deposition was included with Rebel's statement of facts submitted with its own Motion for Summary Judgment. Doc. #195, Ex. 6.

*Nehme*, 632 F.3d 526, 536 (9th Cir. 2011) (citing *Hoffman v. Eighth Judicial District Court*, 823 P.2d 848, 850 (Nev. 1974)).  However, "[i]nterpretation of a contract is a matter of law," and summary judgment "is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning."  *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988).

The Court finds that Rebel has raised a genuine dispute of material fact on its breach of contract claim.  First, the lease agreement was a valid contract between Rebel and VVWD.  Second, as discussed above, VVWD has not established that it was excused from performance when Rebel built the tower without express permission from the BLM.  Third, Rebel has raised a dispute as to whether VVWD breached the contract; one such potential breach Rebel identifies is that VVWD unilaterally terminated the contract without notifying Rebel, in violation of an express provision of the lease agreement.[10]  Doc. #193, Ex. A at 4.  Fourth, Rebel suffered damages because the amendment to VVWD's right of way extinguished its rights under the lease agreement.  Accordingly, the Court denies VVWD's Motion as to Rebel's breach of contract claim.

### 4.    Breach of the Implied Covenant of Good Faith and Fair Dealing

"It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other."  *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007).  Where one party to a contract "deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing."  *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).  To succeed on a claim for breach of the implied covenant of good faith and fair dealing, plaintiff must (1) identify the contract that is the basis for the claim, (2) identify the conduct that allegedly constituted the breach of the covenant, (3) indicate that this conduct was deliberate, and (4) show how the alleged breach caused damage.  *See Morris*

---

[10] Rebel also identifies VVWD's act amending its right of way for the white rock site despite the lease agreement's language requiring that VVWD could not "enter into any leases or agreements affecting the leasing or management of the Improvements without Lessee's consent."  Doc. #193, Ex. A at 6.

*v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994).  A defendant can be liable for breach of the implied covenant of good faith and fair dealing even if it is determined that the defendant did not breach the underlying contract.  *Morris*, 866 P.2d at 457 n.2 ("Whether a breach of the *letter* of the contract exists or not, the implied covenant of good faith is an obligation independent of the consensual contractual covenants.").

Rebel has raised a genuine dispute of material fact regarding whether VVWD's actions support its claim for breach of the implied covenant of good faith and fair dealing.  For example, after the BLM issued its notice of trespass to Rebel, VVWD acknowledged its responsibility for the trespass issue, stated that it would attempt to resolve the problem, and entered into an amendment with the BLM that essentially extinguished Rebel's rights to the white rock site.  *See* Doc. #193, Ex. D ("VVWD may not sub-lease or otherwise authorize use of public lands.").  This conduct raises a genuine dispute of material fact regarding whether VVWD deliberately acted to undermine the contract.  Accordingly, the Court denies VVWD's Motion as to Rebel's claim for breach of the implied covenant of good faith and fair dealing.  *See Morris*, 886 P.2d at 457.

### 5. Intentional Interference with Prospective Economic Advantage

VVWD argues that Rebel's claim for intentional interference with prospective economic advantage against VVWD is barred because of Rebel's own breach in building the communications tower without seeking permission from the BLM.  Rebel argues that to survive summary judgment, it need only establish a genuine dispute as to whether the VVWD intended to interfere with Rebel's prospective economic advantage, and that it has raised such a dispute.

To succeed on an intentional interference claim, the plaintiff must establish: (1) existence of a valid contract; (2) the defendant's knowledge of the contract; (3) acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage."  *J.J. Indus.*, 71 P.3d at 1267.  Additionally, "the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party."  *Id.* at 1268.  An actor's "interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or

if he knows that the interference is certain or substantially certain to occur as a result of his action." *Las Vegas-Tonopah-Reno Stage Line*, 792 P.2d at 388.

The Court has already found that there remains a genuine dispute as to whether a valid contract existed when VVWD took actions that allegedly interfered with Rebel's prospective business advantage. Thus, the question before the Court is whether VVWD intended to disrupt the contract. Rebel has identified evidence to support its claim. For example, after BLM issued its trespass notice, VVWD stated that it took full responsibility and that it would attempt to resolve the situation with the BLM. Doc. #210, Ex. 9. VVWD then entered into a settlement agreement with the BLM, took full responsibility, and paid a penalty for Rebel's unauthorized use of the white rock site. *Id.*, Ex. 10. Additionally, the agreement stated that "all rights-of-ways and leases issued to VVWD by the BLM are for the sole purpose of the use described in said authorization and that VVWD may not sub-lease or otherwise authorize use of public lands." *Id.* This agreement with the BLM indicates that VVWD was at least substantially certain that interference with the Rebel contract would occur when it entered into the settlement agreement with the BLM. *See Las Vegas-Tonopah-Reno Stage Line*, 792 P.2d at 388.

Thus, the only remaining question is whether VVWD's alleged conduct was tortious. As discussed above, Rebel has raised a genuine dispute as to whether VVWD's conduct breached the implied covenant of good faith and fair dealing. A jury could therefore find that VVWD's intentional acts that undermined the Rebel/VVWD lease agreement were tortious. Accordingly, the Court denies VVWD's Motion as to Rebel's claim for intentional interference with prospective economic advantage.

### 6.    Conversion

Under Nevada law, "conversion occurs when a person exerts wrongful dominion over another's personal property without permission." *Med. Providers Fin. Corp. II v. New Life Centers, LLC*, 818 F. Supp. 2d 1271, 1276 (D. Nev. 2011) (citing *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000)). "[T]he tort typically involves wrongful taking and carrying

away of something tangible." *Id.* (quoting *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*, 134 F.3d 502, 506 (9th Cir. 1998)).  "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Evans*, 5 P.3d at 1048.  "Whether a conversion has occurred is generally a question of fact for the jury." *Id.*

VVWD argues that it cannot be liable for conversion because it has not exerted dominion over the communications tower: "While perhaps not practical, subject to any requirement of the BLM in connection therewith, Rebel has been and is free to come and take the tower away."  Doc. #196 at 12.  However, a reasonable jury could find that by taking responsibility for the BLM's notice of trespass and amending its right of way to extinguish Rebel's rights to the white rock site, VVWD exerted dominion over Rebel's property for purposes of a conversion claim.  Noting that conversion generally involves questions of fact for the jury, the Court denies VVWD's Motion as to Rebel's conversion claim.  *See Evans*, 5 P.3d at 1048.

### 7.    Condemnation

Rebel argues that VVWD improperly appropriated Rebel's property without compensation for public use when VVWD secured the exclusive rights to use the white rock site and communications tower in the amendment to VVWD's right of way.  VVWD contends that Rebel's condemnation claims are merely mischaracterized contractual claims, and that Rebel's property was not "taken" by VVWD "for public use."

Article I § 8(6) of the Nevada Constitution provides that "[p]rivate property shall not be taken for public use without just compensation having been first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made."  "Inverse condemnation is an 'action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'"  *State Dep't of Transp. v. Cowan*, 103 P.3d 1, 3 (Nev. 2004) (quoting *Thornburg v. Port of Portland*, 376 P.2d 100, 101 n.1 (Or. 1962)).  "A taking can arise when the government regulates or physically

appropriates an individual's private property." *ASAP Storage, Inc. v. City of Sparks*, 173 P.3d 734, 740 (Nev. 2007). "Physical appropriation exists when the government seizes or occupies private property or ousts owners from their private property." *Id.* "A physical appropriation by ouster occurs when the government substantially interferes with an owner's right of access to his or her property." *Id.*

Rebel has raised a genuine dispute of material fact as to whether VVWD's actions constituted appropriation of Rebel's land without just compensation. Specifically, VVWD stated that it would attempt to resolve the trespass issue with the BLM, and then entered into an amendment of its right of way for the white rock site that effectively revoked Rebel's rights to the property. Doc. #210, Ex. 9; Doc. #193, Ex. D. Under Nevada law, this could constitute substantial interference with a right of access to property. *See ASAP Storage,* 173 P.3d at 740. Accordingly, the Court denies VVWD's Motion as to Rebel's condemnation claims.

### 8.    Concert of Action

As discussed above, a plaintiff cannot establish a claim for concert of action without establishing that the defendant's conduct is inherently dangerous or poses a substantial risk of harm to others. *See Corbitt*, 21 P.3d at 14-15. Plaintiff cannot establish that a contract for a lease of property poses such a danger or substantial risk. *See Tai-Si Kim*, 838 F. Supp. 2d at 1092-93 (D. Nev. 2012) (granting defendants' motion for summary judgment because "[e]ngaging in a real estate transaction is not inherently dangerous and does not pose a substantial risk of harm to others"). Accordingly, the Court grants VVWD's Motion as to Rebel's concert of action claim.

### 9.    Civil Conspiracy

"To establish a claim for civil conspiracy, a plaintiff must establish: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort." *Peterson*, 57 F. Supp. 3d at 1278 (citing *Corbitt*, 21 P.3d at 15). Rebel has raised a genuine dispute of material fact regarding whether VVWD committed the torts of breach of the implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, and conversion.

1  Additionally, Rebel has raised a genuine dispute regarding whether VVWD entered into an

2  agreement with the City to commit the tort of intentional interference with prospective business

3  advantage.  Accordingly, the Court denies VVWD's Motion as to Rebel's claim for civil

4  conspiracy.

5          **C. Rebel's Motion for Partial Summary Judgment**

6          Rebel moves for summary judgement on its breach of contract, breach of the implied

7  covenant of good faith and fair dealing, and fraudulent inducement claims against VVWD.  Doc.

8  #194 at 1.

9              **1.      Breach of Contract**

10          The Rebel/VVWD lease agreement provides that if either party defaults under the

11  agreement, VVWD must provide Rebel written notice and an opportunity to cure.  Doc. #195, Ex. 1

12  at 4.  If, after notice of default, Rebel failed to cure, then VVWD would have a right to terminate

13  the agreement upon written notice to Rebel.  *Id.*  Rebel argues that VVWD breached this provision

14  of the agreement when it unilaterally terminated the lease agreement—in entering into the right of

15  way amendment with the BLM—without notifying Rebel.  VVWD argues that it was excused from

16  performance under the contract because the BLM made such performance impossible, and

17  providing written notice to Rebel would have been futile.

18          To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of

19  a valid contract; (2) that plaintiff performed or was excused from performance; (3) a breach by the

20  defendant; and (4) damages resulting from defendant's breach.  *See* Restatement (Second) of

21  Contracts § 203 (2007); *see also Saini*, 434 F. Supp. 2d at 919-20.  "Under Nevada law, '[a] breach

22  of contract may be said to be a material failure of performance of a duty arising under or imposed

23  by agreement.'" *Las Vegas Sands*, 632 F.3d at 536 (quoting *Bernard v. Rockhill Dev. Co.*, 734 P.2d

24  1238, 1240 (Nev. 1987)).  "Whether a party has breached a contract and whether the breach is

25  material are questions of fact." *Id.* (citing *Hoffman*, 823 P.2d at 850).  However, "[i]nterpretation

26  of a contract is a matter of law," and summary judgment "is appropriate when the contract terms

are clear and unambiguous, even if the parties disagree as to their meaning." *King Features Entm't*, 843 F.2d at 398.

The Court finds that there remains a genuine dispute of material fact regarding whether VVWD's obligation under the lease agreement was discharged by impossibility. "Generally, the defense of impossibility is available to a promisor where his performance is made impossible or highly impractic[al] by the occurrence of unforeseen contingencies." *Nebaco, Inc. v. Riverview Realty Co.*, 482 P.2d 305, 307 (Nev. 1971). VVWD argues that the BLM's actions made performance under the lease agreement impossible, and that the BLM's intervention was not foreseeable. There remains a factual question regarding whether VVWD knew that the BLM originally intended to prohibit VVWD from leasing the white rock site to third parties. If VVWD was not aware of BLM's restrictive view of the right of way, then this would support VVWD's argument that BLM's intervention was not foreseeable. *See Las Vegas Sands*, 632 F.3d at 536 (finding that whether a party breached or whether a breach was material is a factual question); *Am. Heritage, Inc. v. Native Am. Dev. and Consulting Servs., Inc.*, No. 2:05-cv-0942, 2007 WL 956887 at *1 (D. Nev. Mar. 29, 2007) (finding that impossibility of performance raised a question of fact to preclude summary judgment). Accordingly, the Court denies Rebel's Motion for Summary Judgment as to its breach of contract claim.

### 2.    Breach of Implied Covenant of Good Faith and Fair Dealing

"It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson*, 163 P.3d at 427. Where one party to a contract "deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Butch Lewis Prods.*, 808 P.2d at 923.

Rebel argues that it is entitled to summary judgment on its claim for breach of the implied covenant of good faith and fair dealing because (1) the parties entered into a contract; (2) VVWD owed Rebel a duty of good faith and fair dealing; (3) VVWD breached the contract; and (4) Rebel

suffered harm.  *See* Doc. #194 at 8-9.  Rebel has not identified any evidence to resolve the disputed

question of whether VVWD deliberately contravened the spirit of the contract.  Accordingly, the

Court denies Rebel's Motion as to its claim for breach of the implied covenant of good faith and

fair dealing.

### 3.    Fraudulent Inducement

To establish a claim for fraudulent inducement, the plaintiff must prove by clear and

convincing evidence: (1) false representation by the defendant; (2) defendant's knowledge or belief

that the representation was false; (3) defendant's intention to induce plaintiff to consent to the

contract's formation; (4) plaintiff's justifiable reliance on the misrepresentation; and (5) damage

resulting from defendant's reliance.  *J.A. Jones Constr. Co.*, 89 P.3d at 1018.  As discussed above,

the Court has granted VVWD's Motion for Summary Judgment as to Rebel's claim for fraudulent

inducement because Rebel has not identified more than a scintilla of evidence that VVWD knew

that its contract with Rebel included misrepresentations, or that VVWD intended to induce reliance

on false information.  Accordingly, the Court denies Rebel's Motion as to its claim for fraudulent

inducement.

### D.  Defendants' Motion to Exclude Expert Testimony

On February 11, 2013, Rebel disclosed Douglas Radtke ("Radtke"), an employee of

Spectrum Economics, as its damages expert.  Radtke prepared a report that concluded that Rebel

suffered $1,880,856.72 in total damages as a result of VVWD's alleged conduct.  *See* Doc. #198,

Ex. C.  Radtke left Spectrum before VVWD had an opportunity to depose him.  Although Rebel

did not change its witness designation, Rebel made another Spectrum employee available for

deposition on June 18, 2014—Eric C. Frye ("Frye").  *See id.*, Ex. D.  VVWD argues that the Court

should exclude Frye's testimony because he was not properly disclosed as a witness, did not

substantially contribute to Radtke's damages report, and his opinions were not based on reliable

methods.[11]  Rebel argues that Frye's testimony should not be excluded because he participated in

---

[11] The City filed a joinder to VVWD's Motion to Exclude Frye's testimony.  Doc. #200.

the preparation of Radtke's report, and his testimony would be helpful to the jury.

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Ninth Circuit has interpreted this rule to require that expert testimony "be both relevant and reliable." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001). "Relevancy simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)).

A trial court "is not required to rigidly apply the specific factors relating to expert scientific evidence to cases involving expert specialized knowledge evidence." *Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 2:01-cv-0294, 2006 WL 3248394, at *2 (D. Nev. Nov. 7, 2006) (citing *United States v. Hankey*, 203 F.3d 1160, 1168-69 (9th Cir. 2000)). For specialized non-scientific testimony like Frye's, the district court therefore exercises its gate-keeping function by analyzing the expert's reliability, which "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind" the testimony. *Hankey*, 203 F.3d at 1169. To determine whether specialized expert testimony is admissible, the court considers: (1) whether the opinion is based on scientific, technical, or other specialized knowledge; (2) whether the opinion would assist the trier of fact in understanding the evidence or determining a fact in issue; (3) whether the expert has the appropriate qualifications to render the opinion; (4) whether the testimony is relevant and reliable; (5) whether the methodology or technique used fits the conclusions; and (6) whether the opinion's probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues or undue consumption of time. *Hankey*, 203 F.3d at 1168.

///

Importantly, Rebel has not formerly substituted Frye as a replacement expert witness for Radtke.  Additionally, Rebel has not submitted a report describing Frye's experience and a summary of the content of his intended testimony.[12]  Without such a report, the Court cannot determine that Frye has the experience and knowledge necessary to be an expert witness, or that his testimony would be helpful to the jury.  Accordingly, the Court grants Defendants' Motion to Exclude Frye's testimony without prejudice.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that the City's Motion for Summary Judgment (Doc. #192) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that VVWD's Motion for Partial Summary Judgment (Doc. #193) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Rebel's Motion for Partial Summary Judgment (Doc. #194) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Exclude Frye's Testimony (Doc. #198) is GRANTED without prejudice.

IT IS FURTHER ORDERED that the parties shall file a joint pre-trial order with the Court pursuant to Local Court Rules 16-3 and 16-4 on or before September 1, 2015.

IT IS SO ORDERED.

DATED this 9th day of July, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[12] Rebel attached Frye's CV to its Opposition to Defendants' Motion to Exclude Frye.  Doc. #215, Ex. 2.  However, a CV alone is insufficient to establish Frye as a competent witness. *See* Fed. R. Civ. P. 26(a)(2)(b) (stating requirements for expert witnesses who are retained or specially employed to provide expert testimony).